UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:  Case Number: 09-16668-7

    SCOTT R. NEALE and
    HOLLY M. NEALE,

                Debtors.

---

    JOHN IWASZCZENKO, JR.,

                Plaintiff,
v.  Adversary Number: 10-185

    SCOTT R. NEALE and
    HOLLY M. NEALE,

                Defendants.

---

## MEMORANDUM DECISION

This is the second adversary filed by Mr. Iwaszczenko contesting the dischargeability of his claim against the Neales. The prior adversary proceeding was dismissed for failure to state a cause of action.[1] The Neales have moved to dismiss this case for similar reasons: namely, that the facts alleged in the complaint do not support a cause of action under 11 U.S.C. §§ 523(a)(2), 523(a)(6), or 727(a). The Court conducted a hearing on the motion to dismiss. The plaintiff, John Iwaszczenko, Jr., appeared pro se, and Attorney Denis P. Bartell appeared on behalf of the defendants. The following constitutes the Court's

---

[1] See Adv. No. 10-14, dismissed June 22, 2010.

findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, and, for the reasons indicated below, the defendants' motion is granted.

The following facts are uncontested. Scott Neale was involved in H2O Development Co. of Plover, LLC, an entity the parties refer to simply as "H2O Development."[2] In 2005, Mr. Iwaszczenko sunk hundreds of thousands of dollars into H2O Development and its real estate development project.[3] Three years later, H2O Development filed for bankruptcy, attempting to reorganize under chapter 11.[4] In that case, Mr. Iwaszczenko filed a proof of claim indicating that he was owed $865,473.00. The Neales subsequently filed this case, and Mr. Iwaszczenko has attempted to avoid the discharge of his claim, contending that the debtors somehow engaged in conduct which precludes bankruptcy relief.

The facts alleged by the plaintiff in support of his claims are as follows. He alleges that Mr. Neale gave him a personal financial statement in December of 2004 that indicated a net worth of over $1.2 million and contends that this statement was used to "coerce" him to provide money to H2O Development. He

---

[2] It appears that Mr. Neale was a principal stockholder in H2O Holdings, Inc., which in turn owned H2O Development. In the pleadings, the debtor characterizes himself as the "principal investor and promoter" of the H2O Development project. During the chapter 11 proceedings, Mr. Iwaszczenko likewise indicated owning stock in H2O Holdings.

[3] As the debtors note, his contributions are evidenced by a series of checks and promissory notes. Whether characterized as loans or investments, the debtors do not deny that Mr. Iwaszczenko provided H2O Development with a significant amount of money, which he has indicated was essentially his life's savings.

[4] Case No. 08-15829, filed November 4, 2008. The case was dismissed June 18, 2009, on the motion of the United States Trustee.

also says that Mr. Neale has not provided documentation to support the representations in the financial statement.  The defendant apparently transferred $600,000 from H2O Development into a money market account and did not provide Mr. Iwaszczenko with an accounting.  The defendant also testified in the company bankruptcy that he was owed some $2.8 million by H2O Development but has not documented the source of these funds.  The defendant also executed a series of promissory notes on behalf of H2O Development to himself, and did not provide access to the corporate records or reveal the source of corporate funds.  Finally, Mr. Iwaszczenko says that the Wausau Police Department has an ongoing investigation into whether Mr. Neale defrauded him.

  Mr. Neale's response is that Mr. Iwaszczenko did not loan him money personally, and he did not guarantee the company's obligations.  He admits that they were both investors in the H2O Development real estate project, and that both of them lost significant amounts of money when the project failed.  He contends that he did not make any false statements to the plaintiff with regard to his financial condition, the H2O Development project, or H2O Holdings, Inc.  And he submits that the failure to provide documentation or an accounting of various activities does not preclude the discharge of Mr. Iwaszczenko's claims.  As such, he has moved to dismiss the complaint.

  Fed. R. Civ. P. 12(b)(6), which is applicable in bankruptcy adversary proceedings pursuant to Fed. R. Bankr. P. 7012(b), provides that a defendant may raise the "failure to state a claim upon which relief can be granted" as a defense.

3

This defense may be asserted by a motion to dismiss.  While the federal civil procedure rules contemplate "notice" pleading, a complaint must still contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  See Fed. R. Civ. P. 8(a)(2), which is applicable to bankruptcy adversary proceedings pursuant to Fed. R. Bankr. P. 7008(a).  In addition, the circumstances of certain special matters, most notably fraud, must be pled "with particularity."  See Fed. R. Civ. P. 9(b), which is applicable to bankruptcy adversary proceedings pursuant to Fed. R. Bankr. P. 7009.  The Neales' motion to dismiss is premised upon the contention that Mr. Iwaszczenko has not alleged facts which demonstrate that he is entitled to relief, and that he has also not pled his fraud claims with sufficient particularity.

    In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), the Supreme Court recently outlined the standard by which a complaint must be judged when it is "attacked" by a Rule 12(b)(6) motion to dismiss.  The complaint need not contain exhaustive factual allegations, but a plaintiff's obligation to demonstrate an entitlement to relief "requires more than labels and conclusions."  Id.  Further, a "formulaic recitation of the elements of a cause of action will not do."  Id.  To survive a motion to dismiss, the complaint must contain sufficient factual detail that if the allegations were proven to be true, the complaint would state a claim to relief that is plausible on its face.  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Of course, as the Seventh Circuit has cautioned, Bell Atlantic must not be "overread."

Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008). Allowing an action to survive dismissal and proceed to the summary judgment state is often "unlikely to place on the defendants a heavy burden of compliance with demands for pretrial discovery." Smith v. Duffey, 576 F.3d 336, 340 (7th Cir. 2009). Still, despite the relative latitude afforded by notice pleading, a complaint must always allege enough facts to state a claim that is plausible on its face. Limestone Dev., 520 F.3d at 803. How many facts are enough "will depend on the type of case." Id. And the facts as alleged have to be sufficient that if taken as true, they would support the legal claim submitted by the complaint. See Smith, 576 F.3d at 339-40 (facts alleged in complaint could not support cause of action; it was apparent from the complaint that the plaintiff's case had no merit).

In Riley v. Vilsack, 665 F. Supp. 2d 994 (W.D. Wis. 2009), the district court charted the Court of Appeals' evolving evaluation of the impact of Twombly and Iqbal on existing practice within the Seventh Circuit. The primary point of emphasis is that the Supreme Court has not changed the "fundamentals of pleading." Id. at 1003; see also Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d 599, 603 (7th Cir. 2009) ("Our system operates on a notice pleading standard; Twombly and its progeny do not change this fact."). In the context of determining whether the plaintiff's claim is plausible on its face, it must be remembered that a complaint is not implausible simply because the allegations appear fanciful, unrealistic, or even nonsensical. Instead, "implausibility" in the context of a Rule 12(b)(6) motion to dismiss exists when the allegations of the complaint are too conclusory or the

complaint fails to include essential facts about the elements of a claim.  Vilsack, 665 F. Supp. 2d at 1004.  Put simply, a court assessing the sufficiency of a complaint should ask:

> [I]f all the *facts* the plaintiff alleges in his complaint are accepted as true, but all the conclusions are rejected, is it still plausible (that is, more than speculative) to believe that additional discovery will fill in whatever gaps are left in the complaint?

Id.

Further, where the complaint is grounded in allegations of fraud, the plaintiff has the additional burden of pleading those claims "with particularity."  See General Ins. Co. of America v. Clark Mali Corp., 2010 WL 1286076, at *7 (N.D. Ill. Mar. 30, 2010) (under Twombly and Iqbal, "the idea is to state enough facts to present a plausible claim for relief.  Where the claim involves fraud, more is required.").  The circumstances of fraud include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.  Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., 536 F.3d 663, 668 (7th Cir. 2008) (citing GE Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997)).  Rule 9(b) particularity is "the who, what, when, where, and how:  the first paragraph of any newspaper story."  DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).  A complaint which fails to identify the fraudulent statements or the reasons why they are fraudulent does not satisfy the particularity requirements of Rule 9(b).  Skycom Corp. v. Telstar Corp., 813 F.2d 810, 818 (7th

Cir. 1987); S & L Enters. I, LLC v. Eisaman (In re Eisaman), 387 B.R. 219, 222 (Bankr. N.D. Ind. 2008).

When considering a motion to dismiss a complaint, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009). To consider the plaintiff's complaint in accordance with the standards set out in the foregoing authorities, however, it is also necessary to determine the elements of the causes of action asserted in the complaint and to compare those elements with the plaintiff's allegations. Lazzaro v. Weichman (In re Weichman), 422 B.R. 143, 149 (Bankr. N.D. Ind. 2010). Here, Mr. Iwaszczenko's complaint alleges that "fraud" occurred but only includes a vague reference to 11 U.S.C. §§ 523(a)(2) and (a)(6).[5] In addition, the adversary cover sheet (but not the complaint itself) references that he is objecting to the debtor's discharge under § 727. The joint pre-trial statement indicates that his causes of action are asserted under § 523(a)(2)(A) and (a)(2)(B), and he does not reference any other claims.

Section 523(a)(2)(A) precludes the debtor from discharging a debt for money, property or credit to the extent obtained by "false pretenses, a false

---

[5] On the last page of the complaint, the plaintiff quotes from another case and includes a reference to §§ 523(a)(2), (4), and (6). It is unclear whether the plaintiff actually intended to allege a cause of action under § 523(a)(4) in the complaint. None is referenced in the joint pre-trial statement. The Court will consider the elements of that claim simply to assure that the plaintiff's allegations have been considered under any possible theory of relief.

representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Section 523(a)(2)(B) precludes discharge of a debt to the extent it was obtained by use of a materially false written statement respecting the debtor's financial condition. Section 523(a)(4) provides that the debtor may not discharge a debt "for fraud or defalcation in a fiduciary capacity, embezzlement, or larceny." Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." Finally, § 727(a) provides grounds for the denial of a debtor's general discharge for such conduct as transferring or concealing assets (§ 727(a)(2)), knowingly making a false oath or account in connection with the case (§ 727(a)(4)), or failing to satisfactorily explain a loss of assets (§ 727(a)(5)).

The plaintiff's complaint contains no factual allegations which would support a cause of action under § 727(a). For example, he complains that Mr. Neale gave him a financial statement that showed a personal net worth of about $1.2 million in 2004. However, there is no allegation that Mr. Neale has hidden any of his assets, failed to disclose assets, or failed to explain how assets were lost.[6] The concept of notice pleading does not authorize a fishing expedition; the defendant is entitled to "fair notice" of what the claim is and the grounds upon which it rests. Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). The mere checking of a box on the adversary cover sheet is simply not sufficient, as it

---

[6] For his part, Mr. Neale's response is that he wagered everything on the success of H2O Development and lost.

8

requires the defendant to guess as to what part of § 727(a) the plaintiff might consider relevant to the facts. Even more problematic is the fact that none of the facts pled in the complaint appear logically connected to the elements of the causes of action available under § 727(a). Consequently, to the extent the plaintiff's complaint attempted to raise claims under § 727(a), it fails to state a claim upon which relief can be granted.[7]

Under § 523(a)(4), a debtor may not discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The complaint's reference to § 523(a)(4) does not indicate which aspect of the section the plaintiff might consider applicable, and his pre-trial statement does not reference any such claim. A claim of fraud or defalcation under this section requires the presence of a fiduciary relationship between the parties.[8] A fiduciary relationship qualifies under § 523(a)(4) only if it "imposes real duties in advance of the breach." In re Marchiando, 13 F.3d 1111, 1116 (7th Cir. 1994). The plaintiff's complaint fails to allege sufficient facts to plausibly suggest that there was such a relationship between the parties, or that there was a substantial inequality in power or knowledge. Eisaman, 387 B.R. at 223; see also O'Shea v. Frain (In re Frain), 230 F.3d 1014, 1017 (7th Cir. 2000). Further, the complaint fails to identify the

---

[7] The plaintiff appears to concede this, as his pre-trial submissions only reference § 523(a).

[8] The statute requires the existence of an express trust or other fiduciary relationship that imposes an obligation on the fiduciary which exists "prior to the alleged wrongdoing." Deady v. Hanson (In re Hanson), 432 B.R. 758, 774 (Bankr. N.D. Ill. 2010).

debtor's intentional deceit, which would be required to prove fraud under this section. It also does not set forth the misappropriation of trust funds held in a fiduciary capacity, which is a required element of a claim for "defalcation." Hanson, 432 B.R. at 774.

"Embezzlement" in the context of § 523(a)(4) has been defined as the "'fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" In re Weber, 892 F.2d 534, 538 (7th Cir. 1989) (quoting Moore v. United States, 160 U.S. 268, 269, 16 S. Ct. 294, 40 L. Ed. 422 (1985)); Zamora v. Jacobs (In re Jacobs), 403 B.R. 565, 575 (Bankr. N.D. Ill. 2009). Embezzlement exists where the original acquisition of funds was lawful or consensual, whereas larceny requires a showing of "felonious intent" at the time of the taking. Hanson, 432 B.R. at 775. Here, the complaint does not allege any facts which indicate that the debtor appropriated any of the creditor's funds for his own benefit or that he did so with fraudulent intent and deceit. For these reasons, the complaint fails to state a cause of action under this section.

To succeed under § 523(a)(6), the plaintiff must allege the existence of an injury that arose through the debtor's "willful or malicious" conduct. To succeed under this section, the plaintiff must show that the debtor intended to and caused an injury to the plaintiff or the plaintiff's property interests, that the debtor's actions were willful, and that the debtor's actions were malicious. Zamora v. Jacobs (In re Jacobs), 403 B.R. 565, 581 (Bankr. N.D. Ill. 2009). Debts for bodily injury fall within the scope of § 523(a)(6), although the section is not limited to

10

physical damage or destruction; "an injury to intangible personal or property rights is sufficient." Id. (citing 4 Collier on Bankruptcy, ¶ 523.12[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev.)); see also In re Adametz, 53 B.R. 299, 304 (Bankr. W.D. Wis. 1985) (conversion of collateral constituted willful and malicious injury; a debtor's knowledge that a transfer of property subject to a security interest would harm a creditor may be inferred).

For purposes of the section, "willful" means that the debtor possessed an intent to cause injury, not simply that the debtor's intentional conduct resulted in an injury. Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998). To be successful on this claim, the creditor must prove that the debtor subjectively intended to injure the creditor or knew that injury was "substantially certain" to result. Jacobs, 403 B.R. at 581 (citing Susan V. Kelley, Ginsberg & Martin on Bankruptcy, § 11.06[1] (95th ed. 2008)). An action is regarded as "malicious" if it is taken "in conscious disregard of one's duties without just cause or excuse." In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994). The complaint in this case does not contain factual allegations to support a claim under this provision of the code.

Boiled to its essence, all the complaint indicates is that Mr. Neale solicited investments from the plaintiff, did not repay the obligation, and has failed to provide him with requested information or documentation. While the plaintiff undoubtedly feels hurt (or injured) by the debtor's conduct, his claim did not arise as a result of an injury to him or his property. He does not allege the loss of

11

collateral or an injury to an intangible personal or property right. The complaint simply alleges that Mr. Neale "coerced" the plaintiff to lend or invest funds in the development project, perhaps through the use of the written financial statement reflecting that the debtor had a net worth of $1.2 million. While fraud may constitute a tort, § 523(a)(6) cannot make all debts procured by fraud nondischargeable, because that would make other sections, including § 523(a)(2), superfluous. Berkson v. Gulevsky (In re Gulevsky), 362 F.3d 961, 964 (7th Cir. 2004). Further, as the Seventh Circuit noted, in the context of an alleged fraudulent statement of financial condition, "§ 523(a)(6) cannot be used to circumvent § 523(a)(2)(B)'s writing requirement." Id.

The only possible claims, as the plaintiff appears to concede in his pre-trial statement, are the allegations of fraud under §§ 523(a)(2)(A) and (a)(2)(B). In order to except a debt from discharge under § 523(a)(2)(A), a creditor is typically required to establish the following elements: (i) that the debtor made a false representation of fact, (ii) that the debtor either knew the representation was false or made the representation with reckless disregard for its truth, (iii) that the representation was made with an intent to deceive, and (iv) that the plaintiff justifiably relied upon the false representation. See In re Kimzey, 761 F.2d 421, 423-24 (7th Cir. 1985), abrogated on other grounds by Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Vozella v. Basel-Johnson (In re Basel-Johnson), 366 B.R. 831 (Bankr. N.D. Ill. 2007). Essentially, this section requires proof of false or deceptive conduct, fraudulent intent, and justifiable

12

reliance. Mayer v. Spanel Int'l, 51 F.3d 670, 674 (7th Cir. 1995). Relevant to this case, however, is the fact that § 523(a)(2)(A) does not cover alleged fraudulent statements "respecting the debtor's or an insider's financial condition."

The use of a fraudulent financial statement is instead covered by § 523(a)(2)(B). Under this section, the plaintiff must prove that the debtor utilized, with an intent to deceive, a materially false written statement regarding his financial condition and that the creditor reasonably relied on that statement to his detriment. Shaw Steel, Inc. v. Morris (In re Morris), 223 F.3d 548, 552 (7th Cir. 2000); In re Sheridan, 57 F.3d 627, 633 (7th Cir. 1995). The statute specifically requires proof of "reasonable" reliance, rather than the "less-demanding" justifiable reliance standard applicable to other fraud claims under § 523(a)(2)(A). Morris, 223 F.3d at 552. While this section requires a greater showing of reliance, the Court's task is not to second-guess the creditor's decision. Instead, the goal is simply to determine whether the creditor's claimed reliance was "so unreasonable as not to be actual reliance at all." Id. at 553 (citing In re Garman, 643 F.2d 1252, 1256 (7th Cir. 1980)).

To support the claim of fraud, the plaintiff's complaint references a series of meetings that he had with Mr. Neale in the early part of 2005. Mr. Iwaszczenko alleges that during those meetings, Mr. Neale made some representations about his own personal involvement in H2O Development, told Mr. Iwaszczenko how much money was needed and when it might be repaid, and provided Mr. Iwaszczenko with a personal financial statement. Rather than identify the particular false

statements which he believes were both material to the transaction and relied upon to his detriment, Mr. Iwaszczenko simply alleges that "said representations were untrue." He does not identify why Mr. Neale's financial statement was material to the transaction, especially since Mr. Neale did not personally borrow the funds or personally guarantee repayment of any funds. He also does not specifically identify any oral statements (or lies, in common parlance) that Mr. Neale used to trick him into investing in the project. In essence, the complaint reflects the common perspective of someone who has lost money in a failed venture: namely, that because money was not repaid as promised, some sort of fraud must have occurred.

When considering a motion to dismiss under Rule 12(b)(6), the Court's task is to examine the factual allegations of the complaint. Where fraud is alleged, the creditor must plead his claims "with particularity," and one component of that is to provide the "content" of the alleged misrepresentation. Windy City, 536 F.3d at 668. A complaint which fails to identify the fraudulent statements *or the reasons why they are fraudulent* does not satisfy the particularity requirements of Rule 9(b). Skycom, 813 F.2d at 818. The allegations regarding the potential criminal investigation or the debtor's subsequent failure to provide Mr. Iwaszczenko with desired information do not have a bearing on whether the debtor *obtained* money by fraudulent means, as those events occurred after Mr. Iwaszczenko invested money in H2O Development. Under § 523(a)(2)(A), the plaintiff must allege (and ultimately prove) that the debtor's lies (or fraudulent scheme) *induced* the plaintiff

14

to part with his money, and that the debtor told the lies, or concocted the scam, with the expectation that the plaintiff would do so.

Those who scheme to obtain money from others through fraudulent means cannot so easily escape those they have cheated; the bankruptcy code is not an "engine for fraud." McClellan v. Cantrell, 217 F.3d 890, 893 (7th Cir. 2000). As the Seventh Circuit noted, "actual fraud" in the context of § 523(a)(2)(A) is broader than, and need not take the form of, a specific misrepresentation if there is evidence of a fraudulent scheme by which the debtor sought to take advantage of another; the statute includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." Id. The problem with the plaintiff's complaint is that he makes only vague, speculative allegations as to the components of the scheme. He says he was told how much money the project needed and when he might be repaid, but there are no allegations that the debtor misrepresented existing factual conditions, or that the development project did not exist. He does not identify the specific fraudulent statements or offer any reason as to why (or how) they were fraudulent. Much of his complaint is concerned with things he alleges he has not been told by the debtor, but when an alleged fraud consists of failing to tell the alleged victim something, the plaintiff "must show that there was a duty to tell him that something." Smith, 576 F. 3d at 338. The complaint neglects to do so.

Finally, he made only a conclusory allegation that the debtor's financial statement was "untrue." The debtor's provision of a financial statement ostensibly

15

used to induce (or encourage) Mr. Iwaszczenko's involvement in the H2O Development project is one of the few concrete facts contained within the complaint, and the debtor does not deny doing so. However, as the Seventh Circuit has indicated, the Rule 9(b) particularity requirement contemplates essentially the same information as might be found in "the first paragraph of any newspaper story." DiLeo, 901 F.2d at 627 (or as the Court of Appeals put it, "the who, what, when, where, and how"). At least in the context of 523(a)(2)(B), Mr. Iwaszczenko's complaint offers the who, the when, the where, and even the what. But there is nothing at all about *how* the financial statement was fraudulent. On its face, the complaint fails to provide any information about one of the crucial elements of a claim under § 523(a)(2)(B): that the proffered financial statement was "materially" false.

　　The bankruptcy code only authorizes a discharge for the proverbial "honest but unfortunate debtor." Grogan v. Garner, 498 U.S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). At the same time, the exceptions to discharge must be narrowly construed in favor of the code's policy of affording debtors a fresh start in life. Gulevsky, 362 F.3d at 963. This means that creditors are obligated to demonstrate that they were truly enmeshed in the debtor's fraudulent scheme, and that the debtor actually extracted money from them by way of fraud. When pursuing a claim, the plaintiff need not "lard" the complaint with facts. Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009). But a complaint also cannot be "threadbare." Limestone Dev., 520 F.3d at 804. Here, the complaint expresses

16

Mr. Iwaszczenko's evident distress about the loss of his life's savings, and the Court is sympathetic to his plight. But it does not offer enough of the "what" or the "how" in regard to the debtor's alleged fraud to satisfy the particularity requirements of Rule 9(b); he gives no reason *why* the financial statement or other representations were fraudulent. Skycom, 813 F.2d at 818. Consequently, the complaint must be dismissed for failure to state a cause of action.

When dismissing a complaint under Rule 12(b)(6), courts frequently afford plaintiffs the opportunity to amend the complaint. See Weichman, 422 B.R. at 160 ("Thus, when the court has determined that a Rule 12(b)(6) motion should be granted with respect to a complaint, the court will provide the plaintiff with one chance to file an amended complaint before the case or complaint is dismissed with prejudice."). This presupposes, however, that a more carefully drafted complaint could state a claim. Id. Further, the Court notes that the plaintiff has already had one opportunity to plead these claims in an earlier case which was dismissed for similar reasons. Despite multiple opportunities, the plaintiff has not crafted a complaint which states a claim for relief. At this point, dismissal of the case with prejudice is appropriate.

Dated: November 18, 2010

BY THE COURT:

/s/ Thomas S. Utschig
_____
Hon. Thomas S. Utschig
U.S. Bankruptcy Judge

17